**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

UNITED STATES OF AMERICA

                                 Case No. 1:25-CV-212

           Plaintiff,

    v.

Khairi Zaman,

           Defendant

**DECLARATION OF SHAUNA KINCHELOE, M.D.**

I, Shauna Kincheloe, M.D., make the following statements under oath and subject to the penalty of perjury pursuant to the provision of 28 U.S.C. § 1746.

1.      I am a licensed Board-Certified Family Medicine physician assigned to the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE) Health Service Corps (IHSC) as the Staff Physician at the Port Isabel Detention Center (PIDC). I have held this position since 3/2025.

2.      ICE is committed to ensuring that every person detained in its custody receives timely access to necessary and appropriate medical, dental, and mental health care and treatment while in custody. The health, safety, and welfare of those detained in its custody are among agency's highest priorities, and IHSC has protocols in place to ensure that any patient on a hunger strike within its detention facilities is promptly and appropriately addressed and treated.



GOVERNMENT
EXHIBIT
1

3.      As the Staff Physician at the Port Isabel Detention Center, my duties include providing medical care for detainees at the facility.

4.      This declaration is made in support of the Complaint and Motion by the United States of America to perform involuntary vital measurements, examination, intravenous hydration, and involuntary feedings for Khairi Zaman, A#226166039 who is detained at the Port Isabel Detention Center.

5.      I am the treating physician of Khairi Zaman, and I make this declaration upon a review of their medical record and my examination and treatment of Khairi Zaman.

6.      Khairi Zaman is a native and citizen of Afghanistan. He was transferred from El Valle Detention Facility to Port Isabel Detention Center on September 15, 2025. His official hunger strike began on September 11, 2025, while being detained at the El Valle Detention Facility.

7.      On arrival at Port Isabel Detention Center, Khairi Zaman was on his 14th consecutive missed meal and was classified as a hunger striker pursuant to IHSC guidance. Khairi Zaman states that he is on a hunger strike due to his discontent with his case. He is currently on day 90 of his hunger strike and has missed 270 meals.  He has consumed no documented voluntary water intake and no food since he initiated his hunger strike.

8.      Khairi Zaman's current weight is 130.2 pounds.  His pre-hunger strike weight was 144 pounds. Khairi Zaman has lost 13.8 pounds, which reflects a loss of 9% of baseline body weight since the onset of his hunger strike.

9.      Khairi Zaman has been evaluated by a Licensed Social Worker and displays no evidence of a psychiatric condition that would cause him not to eat or drink.  He appears to be operating under his own free will.

10.    Khairi Zaman has been counseled by medical staff with an interpreter on the effects of self-imposed dehydration and starvation on his body. He has also been informed of the involuntary hydration and feeding procedures that will be pursued to prevent injury and/or death to himself should he continue not to eat.

11.    The patient arrived at our facility during his dry hunger strike in extremely guarded condition. Upon arrival, he could not move his arms or legs, nor would he open his eyes or respond to verbal cues. Since receiving IV hydration and nutrition though NG tube feedings, he is now able to move his extremities despite being weak. He can transfer himself from the wheelchair to the shower. He is alert and responsive to questions. He remains frail in appearance with visibly sunken temples, fat and muscle loss to the extremities with visible prominence to the arms, scapula and clavicles. The patient has received IV hydration as needed based on his hydrational status because he is not drinking any fluid at all. He has received nutritional supplements (very high calorie boost) which have been advanced to twice per day feedings to achieve the recommended caloric intake for the alien. The prealbumin, which is used to measure nutritional status in hunger strikers, dropped to 17 on 9/29/2025 and is now improved at a level of 29 on 11/7/2025, after nutritional supplements by NG tube feeding. The specific gravity in the urine test on 9/29/2025 was less than 1.005, which is an indication of dehydration due to his dry hunger strike. He has received daily IV hydration of 1-2 Liters, and his specific gravity is in the normal range. He is still refusing any form of oral hydration or nutrition and indicates that he will continue his hunger strike until he is removed from this country. A dry hunger strike will cause rapid decompensation if not treated appropriately. He is now on day 90 of his hunger strike and missed meal number 270 with breakfast as of 12/10/2025. His baseline weight at the start of the hunger strike was 144 pounds and is now 130.2 pounds however, when restarting his feeding, his weight decreased to

120.6 on 9/20/2025 and the feeding gradually increased to provide him with adequate caloric intake. It is necessary to slowly restart feeding on a hunger strike to lessen the risk of complications.

12.    He remains in custody at Port Isabel Detention Center and under medical observation by Dr. Shauna Kincheloe, MD.

13.    Khairi Zaman declines all medical care as well as voluntary hydration and nutrition. He is noncompliant with orders but is not combative when he is required to comply by the presence of the use of force team to allow for necessary laboratory work, examination, NG tube feedings and IV hydration.

14.    Laboratory tests are needed to evaluate the metabolic state to include electrolytes and kidney function.

15.    The laboratory tests that need to be obtained during a hunger strike include:

    a.    Complete metabolic panel. This test reveals an increase in markers of kidney function in view of any renal injury. The panel tests BUN (blood urea nitrogen) creatinine level and proteins. It also reveals electrolyte disturbances that can lead to heart arrhythmias such as potassium, phosphate, magnesium and glucose levels.

    b.    Complete blood count. This test reveals the hemoglobin level.

    c.    Urinalysis, which reveals the presence of ketones, blood and crystals in the urine.

    d.    Thiamine levels to assess deficiency at day 14 of a hunger strike.

    e.    Electrocardiogram, if the patient shows elevated potassium, which can lead to arrhythmias.

    f.    Creatinine phosphokinase (CPK), which is an enzyme found inside muscle cells and is released into the blood when the muscle cells rupture. The increase in CPK can lead to rhabdomyolysis, a breakdown of muscle tissue that can fatally damage other vital organs.

    g.    Prealbumin, used as a marker for nutritional status evaluation. Prealbumin will decrease over time the longer a patient fails to consume adequate

nutrition, and the prealbumin level correlates with patient morbidity and mortality risk. Normal prealbumin is 15-35 mg/dL. When prealbumin falls to 5-11mg/dL, significant morbidity risks exist, and aggressive nutritional support is necessary.

16. It is difficult to predict for how long the human body can survive without food; if an individual does not have adequate fat stores, this time decreases significantly. If an individual goes without water for approximately eight to ten days, he will suffer from dementia and delirium seizures and ultimately become unconscious. Dehydration greatly accelerates a progressive starvation because the waste that the body produces is not excreted. Death by terminal total fasting occurs by acute depletion of thiamine, causing fatal arrhythmia and/or cardiac arrest.

17. Khairi Zaman's condition is expected to decline as his hunger strike continues. Between the 15th and 30th day of a hunger strike, a patient may suffer neurological symptoms which are severe enough to warrant hospitalization. As discussed above in paragraph 11, Khairi Zaman has already suffered negative effects from his refusal to ingest nutrients.

18. Medical literature reflects that metabolic imbalance, caused by fasting, is likely to result in permanent bodily damage and/or death once weight loss reaches 18% of the patient's initial weight.

19. The medical staff has explained to Khairi Zaman the medical necessity to eat to preserve his health and the medical risks of continuing his hunger strike. Other staff members have repeatedly talked to Khairi Zaman in attempts to convince him to eat solid foods, liquid or bland diets, and/or drink nutritional supplements. However, Khairi Zaman has continued to refuse to eat solid food and/or drink nutritional supplements.

20. I have personally explained to Khairi Zaman my concerns regarding his condition and the medical risks involved with a continuing lack of nourishment. That is, he risks significant and ongoing metabolic changes induced by his decreased nutritional intake. If he continues his

hunger strike, he will reach a state of severe metabolic imbalance, with a high risk of adverse consequences such as permanent damage to his kidneys, liver, heart failure and the risk of death. Khairi Zaman stated to me that he would continue his hunger strike.

21.    In my professional medical judgment, if Khairi Zaman continues his hunger strike, with the aggravating factor of inappropriate oral hydration, he will reach the point where he will require immediate medical intervention to prevent further deterioration and serious medical complications.  Continued fasting will result in permanent damage to his internal organs and has the potential to become life threatening.  Metabolic imbalance, if left untreated, will cause fatal arrhythmia and/or cardiac arrest.  Additionally, his prolonged starvation will continue to weaken his immune system, further exposing him to serious, and possibly fatal consequences should he come in contact with an infected individual.

22.    Khairi Zaman requires a nutritional supplement through a nasogastric tube and intravenous line to provide hydration.

23.    Also, it is necessary to perform laboratory tests and physical evaluation to monitor and assess his clinical condition.  If his laboratory tests reveal other conditions requiring medical attention, it may be necessary to administer such medications intravenously.

24.    Based on Khairi Zaman's current physical condition, and the fact that he has not had adequate nutritional intake for 89 days, nor had appropriate oral fluid intake, it is my informed medical opinion to a reasonable degree of medical certainty that involuntary intravenous hydration and feedings necessary and should be continued at this time.  His lack of nutritional intake compounded by his voluntary dehydration can drastically exacerbate the effects of his hunger strike.  Involuntary hydration and feeding should be pursued only as necessary to prevent injury, further dehydration, malnourishment, organ failure, or loss of life due to his self-imposed hunger

strike. Involuntary feeding will be accomplished through a nasogastric tube or intravenous (parenteral) means.

25.    The issuance of a court order to perform involuntary feedings and hydration, blood draws and urine testing by catheter if necessary, and all necessary physical examinations are medically necessary to preserve and sustain Khairi Zaman' s health, welfare, medical safety, and life.

26.    To ensure the patient's health, welfare, medical safety, preservation of life. Should the patient refuse to cooperate with laboratory blood draws, urine tests, involuntary hydration and/or involuntary nutrition, medical soft restraints will be required to immobilize the patient and prevent unnecessary injury to both the patient and medical staff.

I declare under penalty of perjury that the foregoing is true and correct.

Executed December 10, 2025

Dr. Shauna Kincheloe , M.D.
Port Isabel Detention Center